IN THE CIRCUIT COURT OF THE
FIFTH JUDICIAL CIRCUIT IN AND
FOR CITRUS COUNTY, FLORIDA

STEPHEN BROWN, an individual,

    Plaintiff,

v.

FLORIDA FISH and WILDLIFE
CONSERVATION COMMISSION,
an agency of the State of Florida,
JEFFREY J. DAWSY, Citrus County Sheriff,
in his official capacity, and CORRECTIONS
CORPORATION OF AMERICA, a Maryland
corporation,

    Defendants.
_____/

Case No.: 2009-CA-6075

JURY TRIAL DEMANDED

## VERIFIED COMPLAINT

COMES NOW Plaintiff, STEPHEN BROWN ("Plaintiff" or "Brown"), by and through his undersigned counsel, and hereby sues Defendants FLORIDA FISH and WILDLIFE CONSERVATION COMMISSION, an agency of the State of Florida ("FWC"), JEFFREY J. DAWSY, Citrus County Sheriff, in his official capacity ("Sheriff Dawsy"), and CORRECTIONS CORPORATION OF AMERICA, a Maryland corporation ("CCA") (FWC, Sheriff Dawsy, and CCA are, sometimes, collectively referred to herein as the "Defendants"), and alleges as follows:

### INTRODUCTION

1.     Brown brings this Complaint for false arrest and imprisonment and battery against the Defendants.

2. Damages are claimed to be in excess of $15,000, exclusive of attorneys' fees, interest and costs.

3. Brown has complied with Chapter 768.28, *Fla. Stat.*, by providing his Notification of Claimant's Claim to the Florida Department of Financial Services and Sheriff Dawsy.

### JURISDICTION, VENUE AND PARTIES

4. This Court has subject matter jurisdiction under §26.012, *Fla. Stat.*, and venue is proper in the Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida.

5. Brown is a person *sui juris* who at all relevant times herein resided in Orange County, Florida.

6. FWC is an agency of the State of Florida and a body corporate established pursuant to Chapter 379 of the Florida Statutes.

7. Sheriff Dawsy is the Sheriff of Citrus County and a constitutional officer of the State of Florida.

8. CCA is a Maryland corporation qualified to do business in the State of Florida.

### STATEMENT OF FACTS

9. On September 13, 2008, beginning about noon, Brown and his wife were boating on the Withlacoochee River in Inverness, Florida. Later that afternoon and after having a picnic lunch, Brown and his wife picked up four of their friends at Turner Fish Camp and set out by boat for Big Blue Springs, also on the Withlacoochee River, to go swimming.

10. Upon arriving at the boat ramp at Big Blue Springs at approximately 6:00 p.m., Brown noticed two other boats, including an airboat marked as a FWC boat. After tying up his boat, Brown was proceeding to walk into the water when FWC Officer Joel Bishard "Bishard" approached Brown and asked him if he "was captaining the boat." When Brown stated that he was not at that moment, FWC Officer Bishard directed Brown to get back on his boat for a safety inspection. Another FWC Officer present with FWC Officer Bishard, Ian Sweet "Sweet", assisted in conducting the safety inspection.

11. Brown followed the instructions of FWC Officers Bishard and Sweet and produced life preservers, boat registration, a fire extinguisher, and sounded the horn on the boat. Believing the safety inspection to be complete, as no deficiencies existed, Brown was moving to again exit the boat when FWC Officer Bishard stopped Brown and asked Brown if there was any alcohol on the boat.

12. Brown told FWC Officer Bishard that a half a six-pack of Smirnoff beer was on the boat. Brown further told the FWC Officer that he, Brown, had consumed approximately three cans of Smirnoff beer over the previous six hours. There were three empty cans and three full unopened cans in the cooler on the boat. FWC Officer Bishard also asked Brown if he was currently taking any medication. Brown told FWC Officer Bishard he had taken one 5 milligram tablet of Lortab for pain earlier that day.

13. FWC Officer Bishard then told Brown that Brown would have to take a field sobriety test. FWC Officer Sweet administered the test of which Brown passed without any problems. Upon completion of the field sobriety test, FWC Officer Sweet stated to Brown, "Alright, you're all good" and directed him to go sit down. FWC Officer Sweet then advised FWC Officer Bishard of the results. FWC Officer Bishard,

3

appearing to be in disbelief, proceeded to perform another test on Brown even though Brown had clearly successfully passed the first field sobriety test. FWC Officer Bishard held a pen to Brown's eyes and asked Brown to look at the pen. While performing the test, FWC Officer Bishard was explaining to FWC Officer Sweet that if Brown's eyes couldn't stay on the pen, then Brown was intoxicated. Brown explained to FWC Officer Bishard that he was not intoxicated, that he recently had colostomy surgery as a result of diverticulitis and had a colostomy bag, and that this was his first time out in five weeks since his surgery. Brown was sunburned, tired and hot and just desired to take a swim in the springs to cool off.

14. FWC Officer Bishard had received a radio call [telephone call] informing him that Brown had been arrested in 2004 for driving under the influence, which Brown had not. Therefore, despite passing the field sobriety tests, FWC Officer Bishard handcuffed Brown and placed him under arrest. When Brown asked why he was being arrested, FWC Officer Bishard simply replied Brown was being arrested for "DUI."

15. Brown then asked that he be allowed to take a field breathalyzer test, but FWC Officer Bishard responded that he did not have one to administer to Brown. Brown then reminded FWC Officer Bishard of his colostomy bag and explained that having the colostomy bag meant that he had to be very careful, as damage to the bag could be life threatening. With this in mind, Brown asked that he be transported to jail via automobile from the Big Blue Spring area, which was accessible by automobile. Despite this request and an explanation for it, FWC Officer Bishard simply ignored Brown's request and roughly shoved Brown into the FWC Officer's boat.

4

16. During this period of time, Brown's boat and his passengers on the boat had not moved from their original position when the exchange had begun with FWC Officer Bishard. FWC Officer Bishard screamed at Brown's passengers/guests: "Somebody move this fucking boat or you assholes can all go to jail with him." The passengers moved the boat. FWC Officer Bishard sped off to take Brown to meet a Citrus County Sheriff's Department Deputy, who was waiting to further transport Brown via automobile.

17. The deputy that transported Brown knew Brown and his family, adding to Brown's embarrassment from the ordeal he was enduring. The deputy transported Brown, along with FWC Officer Sweet, to the Citrus County Detention Facility.

18. The Citrus County Detention Facility is operated by CCA, with deputies of the Sheriff handling the processing of all persons arrested in Citrus County by various law enforcement agencies, including without limitation, FWC.

19. Brown was booked at the detention facility and taken to the testing room for additional sobriety tests. Brown, in fact, took two breathalyzer tests and passed both, with his test results being a blood alcohol level of 0.007 and 0.008 (or seven one-thousandths and eight one-thousandths). Florida law deems a person to be boating under the influence of alcohol if they have a blood alcohol level of 0.08 (or 8 one-hundredth) grams of alcohol per 210 liters of breath and presumes that a person is not under the influence and impaired with a blood alcohol level of 0.05 or less. Brown was well below the level to be presumed to not be impaired. In fact, the testing officer told Brown that he "was the most sober person she had ever tested."

20. Despite the breathalyzer tests confirming the result of the field sobriety test – that Brown was sober and not under the influence – Brown was still fingerprinted after taking the breathalyzer tests.

21. Brown then suggested to FWC Officer Bishard that all parties forget about the mistake, that there were no hard feelings, and that each go along their way. FWC Officer Bishard responded to this by becoming irate and demanding that Brown be required to take blood and urine tests to determine that Brown was impaired. The deputies at the detention facility refused to administer these tests.

22. Finally, FWC Officer Bishard stated to Brown "You're lucky that you have that colostomy bag; that is where all the alcohol is sitting."

23. After two hours in a cellblock at the detention facility where Brown was exposed to pepper spray from officers' attempts to control other inmates, Brown was taken back to FWC Officer Bishard. As he was being escorted through the jail to FWC Officer Bishard, Brown overheard one deputy state to another "Recycle that booking number." No booking number issued by the Sheriff on the day of Brown's arrest relates to Brown.

24. When Brown was taken back to FWC Officer Bishard, FWC Officer Bishard told Brown that he was lucky, hoped he had learned his lesson, and that "they" had decided to cut Brown a break. It had been over six hours since Brown had had access to water and an opportunity to clean his colostomy bag, a request that was denied by personnel at the detention facility multiple times. Therefore, Brown started to walk to a nearby store to use its restroom. However, FWC Officer Bishard stopped Brown and stated that Brown was still "in custody" until his ride came to pick him up from the jail.

When Brown asked FWC Officer Bishard by what authority he was continuing to hold him, FWC Officer Bishard replied "My badge and this nine-millimeter on my side is all the authority I need." Brown's ride arrived approximately one hour later.

25. The day after the ordeal, FWC Officer Bishard called Brown at home and, asked in an ominous tone which Brown interpreted as a threat, how Brown was doing and stated "I was just making sure you made it home to Turner Camp Road safely." FWC Officer Bishard then asked Brown if he was planning to be back on the water soon. Brown took this question as a disguised threat that FWC Officer Bishard would be watching Brown's moves and activities.

26. From Brown's statements to FWC Officer Bishard at Big Blue Springs, to the field sobriety tests that Brown successfully passed, and to the two breathalyzer tests that reflected Brown had a blood alcohol level far below even the level at which a person is presumed under Florida law to not be impaired, it is clear that FWC Officer Bishard had no probable cause to arrest Brown.

27. The facts of Brown's sobriety were known to the personnel at the detention facility employed by the Sheriff and by CCA. No deputy or employee of the Sheriff or employee of CCA had any lawful basis to restrain Brown and keep him at the Citrus County Detention Facility against Brown's will. Despite this knowledge and Brown's request to be released, Brown was kept in a cellblock at the correctional facility unlawfully.

28. Brown was unlawfully restrained against his will and suffered physical, mental and emotional damages as a direct and proximate result of Defendants' actions and is entitled to recover those damages.

7

## COUNT I
## FALSE ARREST
## (Against FWC)

29. Brown realleges and incorporates herein the allegations contained in paragraphs 1 through 28.

30. A false arrest occurs when the arrest is unreasonable and not warranted by the circumstances.

31. Brown's arrest on September 13, 2008, was unreasonable and not warranted by the circumstances.

32. On September 13, 2008, Brown was unlawfully restrained against his will by Defendant FWC after FWC Officer Bishard's warrantless arrest of Brown for boating under the influence without probable cause to do so.

33. FWC Officer Bishard knew or should have known that the arrest of Brown was unlawful and wrongful in light of Brown's successful passage of field sobriety tests.

34. Moreover, FWC Officer Bishard knew or should have known that the arrest of Brown was unlawful and wrongful in light of Brown's blood alcohol levels of 0.007 and 0.008 obtained from two Breathalyzer tests administered to Brown.

35. FWC Officer Bishard had the power to arrest and such power is a duty or function of his office.

36. As the direct and proximate result of the conduct of FWC Officer Bishard, Brown suffered bodily injury and resulting pain and suffering, disability, severe mental anguish and emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, lost wages, and loss of ability to earn money. These losses are either permanent or continuing, and Brown will continue to suffer these losses in the future.

8

WHEREFORE, Brown prays for the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Costs of this lawsuit;

C. Pre-judgment, as allowed, and post-judgment interest; and

D. Such other and further relief as this Court may deem just and proper.

## COUNT II
## FALSE IMPRISONMENT
## (Against FWC)

37. Brown realleges and incorporates herein the allegations contained in paragraphs 1 through 28.

38. A false imprisonment action occurs when there is an (1) unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or color of authority; and (4) which is unreasonable and unwarranted under the circumstances.

39. Brown was unlawfully detained by FWC Officer Bishard on September 13, 2008.

40. On September 13, 2008, Brown was unlawfully detained against his will by Defendant FWC after FWC Officer Bishard's warrantless arrest of Brown for boating under the influence without probable cause to do so.

41. The unlawful detention of Brown was without legal authority.

42. Additionally, FWC Officer Bishard knew or should have known that the continued detention of Brown was unlawful and wrongful in light of Brown's blood alcohol levels of 0.007 and 0.008 from two Breathalyzer tests and successful passage of field sobriety tests.

9

43. Thus, Brown's imprisonment on September 13, 2008, was unreasonable and not warranted by the circumstances.

44. As the direct and proximate result of the conduct of FWC Officer Bishard, Brown suffered bodily injury and resulting pain and suffering, disability, severe mental anguish and emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, lost wages, and loss of ability to earn money. These losses are either permanent or continuing, and Brown will continue to suffer these losses in the future.

WHEREFORE, Brown prays for the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Costs of this lawsuit;

C. Pre-judgment, as allowed, and post-judgment interest; and

D. Such other and further relief as this Court may deem just and proper.

## COUNT III
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
## (Against FWC)

45. Brown realleges and incorporates herein the allegations contained in paragraphs 1 through 28.

46. This is an action for damages against the FWC for the deprivation of Brown's Fourth Amendment rights (as applied to the States through the Fourteenth Amendment) in violation of 42 U.S.C. § 1983.

47. The FWC fails to properly train its officers, including Officer Bishard, to understand that a wildlife officer's power to make arrests and board vehicles is limited to situations wherein the officer has probable cause to believe that laws or regulations are being violated.

48. The FWC fails to properly train its officers, including Officer Bishard, to understand that there is no statutory authority for a wildlife officer to stop a citizen for a regulatory inspection without any reasonable suspicion that the person is violating any law or wildlife regulation.

49. The FWC fails to properly train its officers, including Officer Bishard, to make only proper and legal arrests for boating under the influence and, if not boating under the influence, to not arrest and detain individuals for boating under the influence.

50. The FWC fails to properly train its officers, including Officer Bishard, to make only lawful arrests.

51. The FWC's failure to properly train and supervise its officers in this regard is either an express policy, or the failure to train amounts to deliberate indifference by the FWC's supervisory officials to the rights of persons with whom its wildlife officers come into contact.

52. Brown is a victim of this policy.

53. The FWC's failure to properly train and supervise its wildlife officers causes them to violate citizens' constitutional Fourth Amendment rights to be free from unreasonable searches and seizures through the wrongful, intentional and unlawful arrest of citizens, including Mr. Brown, although no crime has been committed.

54. As the direct and proximate result of the conduct of FWC Officer Bishard, Brown suffered bodily injury and resulting pain and suffering, disability, severe mental anguish and emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, lost wages, and loss of ability to earn money. These losses are either permanent or continuing, and Brown will continue to suffer these losses in the future.

WHEREFORE, Brown prays for the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Costs of this lawsuit;

C. Pre-judgment, as allowed, and post-judgment interest; and

D. Such other and further relief as this Court may deem just and proper.

## COUNT IV
## INTENTIONAL TORT – ASSAULT
### (Against FWC)

55. Plaintiff repeats and realleges paragraphs 1 through 28, above, as though fully set forth herein.

56. FWC Officer Bishard intended to cause Brown to fear immediate injury or intended to actually injure Brown.

57. FWC Officer Bishard's apparent, present ability to inflict injuries caused Brown to reasonably apprehend that he would indeed suffer bodily injuries.

58. FWC Officer Bishard's conduct, or the totality of the circumstances, made it appear to Brown that bodily injury was imminent.

59. As a direct and proximate result of FWC Officer Bishard's conduct, Brown suffered bodily injury and resulting pain and suffering, disability, severe mental anguish and emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, lost wages, and loss of ability to earn money. These losses are either permanent or continuing, and Brown will continue to suffer these losses in the future.

WHEREFORE, Brown prays for the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Costs of this lawsuit;

C. Pre-judgment, as allowed, and post-judgment interest; and

D. Such other and further relief as this Court may deem just and proper.

## COUNT V
## INTENTIONAL TORT – BATTERY
## (Against FWC)

60. Plaintiff repeats and realleges paragraphs 1 through 28, above, as though fully set forth herein.

61. After repeatedly making verbal threats of bodily harm, FWC Officer Bishard did in fact intentionally touch or make physical contact with Brown.

62. The physical contact made by FWC Officer Bishard was harmful and offensive to, and was done without the consent of, Brown.

63. The physical contact made by FWC Officer Bishard was done with malice, moral turpitude, wantonness or reckless indifference to the rights of Brown.

64. As a direct and proximate result of FWC Officer Brown's conduct, Brown suffered bodily injury and resulting pain and suffering, disability, severe mental anguish and emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, lost wages, and loss of ability to earn money. These losses are either permanent or continuing, and Brown will continue to suffer these losses in the future.

## COUNT VI
## FALSE IMPRISONMENT
## (Against Sheriff Dawsy)

65. Brown realleges and incorporates herein the allegations contained in paragraphs 1 through 28.

66. A false imprisonment action occurs when there is an (1) unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without

13

legal authority or color of authority; and (4) which is unreasonable and unwarranted under the circumstances.

67. On September 13, 2008, Brown was unlawfully detained against his will by FWC Officer Bishard after his warrantless arrest of Brown for boating under the influence without probable cause to do so.

68. Later, when Brown was turned over to the deputies and employees of Defendant Sheriff Dawsy, they knew or should have known that the continued detention of Brown was unlawful and wrongful in light of Brown's blood alcohol levels of 0.007 and 0.008 from two Breathalyzer tests.

69. The continued detention of Brown was without legal authority and was unreasonable and unwarranted under the circumstances.

70. As the direct and proximate result of the conduct of Defendant Sheriff Dawsy's deputies and employees, Brown suffered bodily injury and resulting pain and suffering, disability, severe mental anguish and emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, lost wages, and loss of ability to earn money. These losses are either permanent or continuing, and Brown will continue to suffer these losses in the future.

WHEREFORE, Brown prays for the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Costs of this lawsuit;

C. Pre-judgment, as allowed, and post-judgment interest; and

D. Such other and further relief as this Court may deem just and proper.

## COUNT VII
## FALSE IMPRISONMENT
## (Against CCA)

71. Brown realleges and incorporates herein the allegations contained in paragraphs 1 through 28.

72. A false imprisonment action occurs when there is an (1) unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or color of authority; and (4) which is unreasonable and unwarranted under the circumstances.

73. On September 13, 2008, Brown was unlawfully detained against his will by FWC Officer Bishard after his warrantless arrest of Brown for boating under the influence without probable cause to do so.

74. Later, when Brown transported to the jail facility operated by CCA, its employees knew or should have known that the continued detention of Brown was unlawful and wrongful in light of Brown's blood alcohol levels of 0.007 and 0.008 from two Breathalyzer tests.

75. The continued detention of Brown was without legal authority and was unreasonable and unwarranted under the circumstances.

76. As the direct and proximate result of the conduct of the CCA's employees, Brown suffered bodily injury and resulting pain and suffering, disability, severe mental anguish and emotional distress, loss of capacity for the enjoyment of life, medical care and treatment, lost wages, and loss of ability to earn money. These losses are either permanent or continuing, and Brown will continue to suffer these losses in the future.

WHEREFORE, Brown prays for the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Costs of this lawsuit;

C. Pre-judgment, as allowed, and post-judgment interest; and

D. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

77. Brown respectfully demands a trial by jury as to all issues so triable.

Dated this 30th day of October, 2009.

                                            Respectfully submitted by,

                                            */s/ Bernard H. Dempsey, Jr.*
BERNARD H. DEMPSEY, JR.
Florida Bar No. 107697
bhd@dempsey-law.com
CHRISTOPHER A. PACE
Florida Bar No. 0676721
cap@dempsey-law.com
DEMPSEY & ASSOCIATES, P.A.
1560 Orange Avenue, Suite 200
Winter Park, Florida 32789
Telephone: (407) 422-5166
Facsimile: (407) 422-8556
Counsel for Plaintiff

## VERIFICATION

I have read the allegations in this Verified Complaint and, to the best of my knowledge, they are true and correct.

_____           __10-12-09_____
Stephen Brown                          Date

**STATE OF FLORIDA**
**COUNTY OF CITRUS**

BEFORE ME, the undersigned authority, this 12th day of October 2009, personally appeared STEPHEN BROWN, who is personally known to me or who has produced _____ as identification, and who did/did not take an oath.

**SWORN TO AND SUBSCRIBED BEFORE ME**

Lois M. Present                        Lois M. Present
Print Name of Notary Public            Signature of Notary Public

(SEAL)                                 My Commission Expires:_____

LOIS M. PRESENT
Comm# DD0822242
Expires 10/17/2012
Florida Notary Assn., Inc